UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

MARY SOLOMON,

        Plaintiff,

  v.

ANTHONY FALCONE, *et al.*,

        Defendants.

Civil Action No. 09-2210 (ABJ)

## MEMORANDUM OPINION

Plaintiff Mary Solomon brings this action against defendants Anthony Falcone ("Falcone"), Wachovia Mortgage Corporation ("Wachovia"), Wells Fargo Bank, N.A. ("Wells Fargo"), and Settlement Solutions, Inc., ("Settlement Solutions") for violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.*, and other state law claims related to defendants' alleged failure to disclose information to plaintiff about refinancing her mortgage loan.[1] The Court previously dismissed without prejudice all claims against defendants Falcone and Settlement Solutions for plaintiff's failure to prosecute. *Solomon v. Falcone, et al.*, Civil No. 09-02210, Order of Dismissal at 1 (D.D.C. June 7, 2011). The only remaining claims are those asserted against Wells Fargo and Wachovia (collectively, "Defendants") as assignees of the mortgage loan.

---

1    Plaintiff has named Wachovia Mortgage, FSB (f/k/a World Savings, FSB) and Wells Fargo Bank, N.A as separate defendants. Defendant Wells Fargo asserts in its motion to dismiss that the proper party defendant is Wells Fargo Bank, N.A because Wachovia merged into Wells Fargo Bank, N.A. on November 1, 2009. Def.'s Mot. to Dismiss at 4. For purposes of this opinion, the Court will treat the arguments made by Wells Fargo as also applying to Wachovia. But the Court will refer to them as collectively as "Defendants" because they are still listed as separate entities on the docket.

Before the Court is Defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, Defendants' motion to dismiss will be granted in part and denied in part.

## BACKGROUND

At the time this action was filed, plaintiff Mary Solomon was a 64 year-old retiree and resident of the District of Columbia ("the District"). Am. Compl. ¶ 2. In 1974, plaintiff received a mortgage loan to purchase a home in the District. *Id*. Prior to the events that gave rise to this lawsuit, Countrywide was the servicer of the loan. *Id*. ¶ 8. In June 2007, the loan had a 6.5% interest rate and a balance of approximately $207,948.51. *Id*. Plaintiff's monthly mortgage payments totalled $1,400, including principal, interest, property taxes, and several insurance policies. *Id*.

In June 2007, defendant Anthony Falcone, who claimed to be employed by Countrywide, contacted plaintiff with a proposal to refinance her mortgage loan at a 3% interest rate. *Id*. ¶¶ 9–10.[2] According to plaintiff, Falcone visited her home and told her that by refinancing her loan, her monthly payments would be reduced to $800 per month for ten years and then revert back to

---

2   According to plaintiff, Mr. Falcone first said he worked for Countrywide, *see* Am. Compl. ¶ 10, but gave her a business card indicating that he worked for Westar, another mortgage servicing company. *Id*. ¶ 19. When plaintiff asked him about this inconsistent information, Falcone said that Westar was a subsidiary of Countrywide and that he was authorized to do business on its behalf. It is unclear from the amended complaint whether Mr. Falcone was actually employed by Westar or Countrywide—most likely because plaintiff never knew this information.

  Defendants argue that they never employed Falcone or authorized him to work as their agent. Under this theory, "[i]f any misrepresentations were made to Plaintiff, they were not made by Wells Fargo or its predecessors but by Anthony Falcone or Westar." Def.'s Mot. to Dismiss at 2. "[A]n assignee stands in the shoes of his assignor and acquires the same rights and liabilities as if he had been an original party to the contract." *Manganaro Corp. v. Jefferson at Penn Quarter, L.P.*, 2005 WL 3273979, at * 3 (D.D.C. Aug. 9, 2005). Although the discovery process may shed light on Falcone's true employer, Defendants do not contest that they were assignees of plaintiff's mortgage loan and therefore any claims arising from the refinanced loan are proper at this stage.

2

her current payment of $1,400. *Id.* ¶ 21. In addition to offering a lower interest rate and monthly payments, Falcone allegedly told plaintiff that the loan would "not be interest-only," that there would be no fees for refinancing, and that she would receive a settlement check for $5,000. *Id.* ¶¶ 22–23. Defendant Falcone informed plaintiff of her right to rescind the loan within three days, but plaintiff claims Falcone did not provide her with two copies of a written notice of the right to cancel. *Id.* ¶¶ 34, 114. Plaintiff submitted a loan application to World Savings Bank and signed the loan documents on November 21, 2007. *Id.* ¶¶ 24, 26, 35.[3] According to plaintiff, World Savings Bank later merged with defendant Wachovia. *Id.* ¶ 25. Wachovia, in turn, was acquired by defendant Wells Fargo. *Id.* ¶ 55.

The next day, plaintiff claims she first learned that she had received a Pick-A-Payment loan with a fixed rate of 8.1% instead of the 3% that Falcone allegedly promised.[4] *Id.* ¶¶ 39, 60. When she reviewed the loan documents, she realized that her financial information was stated inaccurately and that the loan papers indicated that she had more money in her savings account than she actually did. *Id.* ¶ 44. She later received a settlement check for only $3,602.94, *id.* ¶ 36, as opposed to the $5,000 payment Falcone allegedly promised.

Plaintiff attempted to rescind the loan within the three-day period by contacting Mr. Falcone by fax and telephone but was unable to reach him. *Id.* ¶¶ 45–47. During that period, Plaintiff also called her former mortgage company Countrywide about rescinding the loan and was told that the loan had been transferred to World Savings Bank when it was refinanced. *Id.*

---

3     Because the amended complaint alleges that defendant Falcone worked for either Countrywide or Westar, it is unclear how plaintiff ended up submitting a loan application to an entirely different company, World Savings Bank.

4     Plaintiff's Pick-A-Payment loan provided various payment options every month: a minimum interest only payment; an interest-only payment; a payment amount including interest, escrow, and a portion of the principal; and a payment amount including interest, escrow and full principal.

¶¶ 48–50. Plaintiff made payments on the loan to both World Savings Bank and Wachovia. *Id*. ¶¶ 51, 53, and the complaint reveals that plaintiff later refinanced her Pick-A-Pay loan through a different company that is not involved in this lawsuit. *Id*. ¶ 56.

## ANALYSIS

### I.  STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal,* the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 129 S. Ct. at 1949. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*. at 1949, (quoting *Twombly*, 550 U.S. at 555), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In ruling upon a motion to dismiss, a court may

ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

When considering a motion to dismiss under Rule 12(b)(6), the complaint "is construed liberally in [plaintiff's] favor, and [the Court should] grant [plaintiff] the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002).

## II. DISCUSSION

As an initial matter, the Court must clarify the causes of action at issue because plaintiff misnumbered the counts in the amended complaint.[5] Plaintiff asserts violations of the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901, *et seq.*, against Wachovia and Wells Fargo (Counts I and II), violations of the CPPA against Settlement Solutions (Count IV) (dismissed), a common law claim for unconscionability against all defendants (Count VI) (dismissed against Falcone and Settlement Solutions), common law breach of fiduciary duty against Settlement Solutions (Count VII-A) (dismissed), violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*., against Wachovia, Wells Fargo, and unknown assignees (Count VII-B), and violations of the Mortgage Lenders and Brokers Act against Anthony Falcone (Count IX) (dismissed).

---

5    The Court notes there are no Counts III, V, and VIII in the amended complaint. Plaintiff alleges two claims labeled Count VII, which the Court will refer to as Count VII-A and Count VII-B.

The claims still at issue are those against Defendants Wells Fargo and Wachovia: Counts I and II for violations of the CPPA, Count VI for common law unconscionability, and Count VII-B for TILA violations. These claims are asserted against Defendants as successors in interest and assignees of plaintiff's mortgage loan. Pl.'s Opp. at 1.

   A. *Truth In Lending Act Claims*

The Court will first address plaintiff's cause of action under TILA, which is the only federal claim in this case. In passing TILA, Congress sought to ensure the accurate and meaningful disclosure of material terms to consumers in credit transactions. *See* 15 U.S.C. § 1601. Specifically, the creditor must disclose:

> [T]he annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments [and] the due dates or periods of payments scheduled to repay the indebtedness . . . .

*Id*. § 1602(u). These disclosures must be made "clearly and conspicuously in writing, in a form the consumer may keep." 12 C.F.R. § 226.17(a)(1). Lenders must also provide two copies of a notice of the borrower's right to rescind the transaction within three business days after a transaction has been consummated. 15 U.S.C. § 1635(a).

To state a claim under TILA, plaintiff must show either that she did not receive the required disclosures or that the disclosures provided were not clear and conspicuous. *Id*. §§ 1631–32. TILA allows borrowers to bring two types of claims: (1) claims for statutory damages under section 1640 and (2) claims for rescission of a transaction under section 1635. Here, plaintiff brings claims for both statutory damages and rescission. *See* Am. Compl. ¶ 117. Plaintiff avers generally that she did not receive the disclosures required under TILA, and that

6

the disclosures she did receive were not "in a reasonably understandable form." *Id*. ¶¶ 113–114. She also alleges that she did not receive two copies of the notice of right to cancel. *Id*. ¶ 115.

Defendants make three arguments for dismissal of plaintiff's TILA claims. First, they argue that plaintiff's claims under TILA are barred by the statute of limitations. Because plaintiff brings claims for statutory damages as well as for rescission, Defendants are only partly correct. For claims seeking statutory damages, TILA states that "[a]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). For most transactions, the limitations period begins to run on the date of settlement. *See Pena v. A. Anderson Scott Mortgage Group*, 692 F. Supp. 2d 102, 107 (D.D.C. 2010). Here, the settlement of plaintiff's loan occurred on November 21, 2007. Am. Compl. ¶ 26. Plaintiff did not file her lawsuit until November 19, 2009, well after the one-year limit. Plaintiff does not suggest anywhere that the limitations period should be equitably tolled. Therefore, her TILA claim for statutory damages is time-barred and will be dismissed.

Plaintiff's claim for rescission under TILA is subject to a different statute of limitations. A plaintiff seeking rescission must bring an action within three years of the violation or before the home is sold, whichever is first. 15 U.S.C. § 1635(f); *see also Blue v. Fremont Inv. & Loan*, 562 F. Supp. 2d 33, 43 (D.D.C. 2008). The amended complaint does not suggest that plaintiff sold her home, and the Court has already determined that the date of alleged violation was November 21, 2007. Because plaintiff filed her suit before the limitations period for the rescission claim ended on November 21, 2010, her claim for rescission under TILA is not untimely.

Defendants next argue that plaintiff's claim for rescission should be dismissed because they are merely former assignees who no longer own the loans and therefore cannot execute the

rescission under 15 U.S.C. § 1625. The Court rejects this argument. TILA provides that "[a]ny consumer who has the right to rescind a transaction under section 1635 of this title may rescind [it] as against *any* assignee of the obligation." 15 U.S.C. § 1641(c) (emphasis added). A borrower who exercises the right to rescind is entitled to the return of any payments made on the loan. 15 § U.S.C. 1635(b). Other courts have determined that the plain language of the statute does not limit recovery to current assignees. *Miranda v. Universal Financial Group, Inc.*, 459 F. Supp. 2d 760, 765 (N.D. Ill. 2006) (holding that borrower is entitled to return of any payments made to former assignee if she prevails in her suit to enforce her right to rescind). In *Miranda*, the court rejected a similar argument from defendants who were former assignees because "[TILA] is not limited to 'any current assignee' or 'present assignee.'" *Id*. at 756. There is no question after reviewing the amended complaint that Wells Fargo and Wachovia were assignees of the loan at some point in time, even it was only for a short period. *See* Def.'s Mem. to Dismiss at 7 (claiming that Wells Fargo only held plaintiff's loan for six months). Therefore, the Court finds that Defendants, as former assignees of plaintiff's loan, may be sued for rescission. Thus, even though Defendants no longer own the loan, if plaintiff prevails on her rescission claim, she may recoup the payments she made to Defendants on the loan.

Finally, Defendants argue that plaintiff's allegations are "too vague to withstand dismissal" because they are "merely formulaic recitations of a cause of action." Def.'s Mot. to Dismiss at 11. Although the majority of her allegations are quite conclusory, the Court finds that plaintiff has properly alleged at least one TILA violation—failure to provide two copies of the notice of the right to cancel. 15 U.S.C. § 1635(a). Defendants attach a document to their reply brief that appears to be an acknowledgement signed by plaintiff that she received two copies of the notice. A document outside the complaint may be considered on a motion to dismiss under

8

Rule 12(b)(6) if it is "referred to in the complaint" and is "integral to" the plaintiff's claim. *Kaempe v. Meyers*, 367 F.3d 958, 965 (D.C. Cir. 2004). But plaintiff referred to the absence of the document in her complaint, not the document itself. Defendants have not asked the court to consider their motion as a motion for summary judgment, and summary judgment would not be appropriate at this juncture because defendants have not provided the foundation the Court would need under Fed. R. Civ. P. 56 to find that there is no genuine issue with respect to the authenticity of the document or the identification of the signature. *See* 15 U.S.C. § 1635(c) (creating rebuttable presumption of delivery of required disclosures). Nor would such a determination be appropriate in ruling on a motion to dismiss. *See Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

Thus, a question of fact exists as to whether plaintiff received the required copies of the notice to cancel. It may be that this issue will be easily resolved with a properly supported motion for summary judgment, but when the complaint is construed in plaintiff's favor as the Court must with a motion to dismiss, plaintiff may be entitled to relief. Accordingly, plaintiff has alleged facts from which the Court can infer a plausible claim under TILA.

### B. D.C. Consumer Protection Procedures Act Claims

In Counts I and II, plaintiff claims that Defendants engaged in unlawful trade practices under the CPPA. D.C. Code § 28-3904. "The purpose of the [CPPA] is to protect consumers from a broad spectrum of unscrupulous practices by merchants, therefore the statute should be read broadly to assure that the purposes are carried out." *Modern Mgmt. Co. v. Wilson*, 997 A.2d 37, 62 (D.C. 2010). Mortgage transactions are subject to the CPPA. *Williams v. First Gov't Mortg. & Investors Corp.*, 225 F.3d 738, 744 (D.C. Cir. 2000).

Although the allegations are poorly organized and confusing, plaintiff appears to assert claims for unconscionability and misrepresentation. Under the CPPA, it is an unlawful trade practice to "make or enforce unconscionable terms or provisions of sales or leases . . . ." D.C. Code § 28-3904(r). In applying this provision, the statute instructs courts to consider "(1) knowledge by the person at the time credit sales are consummated that there was no reasonable probability of payment in full of the obligation by the consumer" and "(2) knowledge by the person at the time of the sale or lease of the inability of the consumer to receive substantial benefits . . . ." *Id*. Similarly, unfair trade practices include "misrepresent[ing] as to a material fact which has a tendency to mislead," D.C. Code § 28-3904(e), or "fail[ing] to state a material fact if such failure tends to mislead," D.C. Code § 28-3904(f).

Plaintiff alleges, among other things, that Defendants, as assignees and successors in interest to the original loan, "made, funded, and/or securitized unconscionable loans" by offering financial incentives to brokers to "originate loans to borrowers such as Ms. Solomon with unconscionable prepayment penalties." Am. Compl. ¶ 69. Further, plaintiff claims that the loan was unconscionable because it was made without regard to her "ability to pay [the loan] based on her actual income." *Id*. ¶ 70. Plaintiff also states that defendant Falcone misrepresented material key terms of the contract, including the benefits of refinancing, that the mortgage would have a fixed rate, and information "regarding the escalating adjustable rate payments" associated with the loan. *Id*. ¶ 77. According to plaintiff, Falcone assured her that she would receive substantial benefits from refinancing, including a reduced monthly payment, a sizeable settlement check, and a lower interest rate. *Id*. ¶¶ 11, 21, 23. At the pleadings stage, these allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct at 1949. Whether Defendants are ultimately correct that its actions were not

violations of the CPPA or that the transaction did not transpire in the way that plaintiff alleges will be resolved at a later stage of the litigation.

 *C. Common Law Claim for Unconscionability*

In addition to the unconscionability claim under the CPPA, plaintiff asserts another claim for unconscionability in Count VI but does not reference any statute pursuant to which she brings that claim. Am. Compl. ¶¶ 99–102. Accordingly, the Court will treat Count VI as a common law claim for unconscionability. In support of this claim, plaintiff states that her "financial distress and vulnerability were readily apparent to Defendants" and that Defendants "held superior bargaining power." *Id*. As Defendants correctly point out, however, unconscionability "applies only defensively to preclude the enforcement of a contract, not as a sword that a party may use to rescind an unfavorable contract." *Ali v. Mid-Atlantic Settlement Services, Inc*., 640 F. Supp. 2d 1, 11 n. 9 (D.D.C. 2009). Thus, this claim will be dismissed.

## CONCLUSION

For the foregoing reasons, and based upon the motion, the opposition, and the entire record in the case, the Court grants Defendants Wells Fargo and Wachovia's motion to dismiss with respect to Count VI for common law unconscionability and Count VII-B for statutory damages under TILA. The Court denies Defendants' motion to dismiss with respect to Counts I and II for CPPA violations, and VII-B for rescission under TILA. A separate order will issue.

                /s/
               AMY BERMAN JACKSON
               United States District Judge

DATE: June 15, 2011